UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RABECA ORTIZ,

              Plaintiff,

   v.

NANCY A BERRYHILL, Acting
Commissioner of Social Security,

             Defendant.

CASE NO. 2:17-CV-00243-DWC

ORDER VACATING DEFENDANT'S DECISION TO DENY BENEFITS

    Plaintiff Rabeca Ortiz filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of her application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 8.

    After considering the record, the Court concludes the Administrative Law Judge ("ALJ") failed to properly consider the medical opinion evidence of non-examining physician Dr. Guillermo Rubio, M.D, and examining physicians Drs. Christopher Nelson, Ph.D and Richard G. Peterson, Ph.D. Had the ALJ properly considered their opinions, the residual functional capacity

("RFC") assessment may have included additional limitations. Therefore, the ALJ's error is harmful. The Court orders the Commissioner's final decision be vacated in its entirety and this matter remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a *de novo* hearing consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On May 17, 2013, Plaintiff filed an application for SSI, alleging disability as of January 5, 2011.[1] *See* Dkt. 11, Administrative Record ("AR") 13. The application was denied upon initial administrative review and upon reconsideration. AR 13. Plaintiff filed a written request for a hearing on March 5, 2014. AR 13. ALJ Kimberly Boyce heard the matter on August 18, 2014 and again on June 17, 2015 for the purpose of obtaining additional vocational expert testimony. AR 31–62, 63–72. In a decision dated July 24, 2015, the ALJ determined Plaintiff to be not disabled. *See* AR 13–25. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1–8; 20 C.F.R. §§ 404.981, 416.1481.

In Plaintiff's Opening Brief, she maintains the ALJ failed to: (I) properly weigh medical opinion evidence by (A) giving great weight to Dr. Rubio's opinion but failing to include all opined functional limitations in the RFC assessment and (B) providing legally insufficient reasons for rejecting the Drs. Nelson and Peterson's opinions; (II) provide clear and convincing reasons for rejecting Plaintiff's statements about the limiting effects of her conditions; and (III) establish the existence in significant numbers of jobs Plaintiff is able to perform at Step Five. *See* Dkt. 13 at 1.

---

[1] Plaintiff's alleged onset date was amended to February 12, 2010 at the hearing. AR 35.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.   Whether the ALJ properly weighed the medical opinion evidence.**

Plaintiff contends the ALJ erred in her evaluation of the medical opinion evidence of non-examining physician Dr. Rubio and examining physicians Drs. Nelson and Peterson. Dkt. 13, 15. Defendant asserts the ALJ properly considered and weighed all medical opinion evidence and formulated an RFC finding that was consistent with the credible limitations. Dkt. 14.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)); *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("Substantial evidence means more than a mere scintilla but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751).

A.   Dr. Rubio

Plaintiff maintains the ALJ erred when she gave great weight to Dr. Rubio's opinion, yet failed to include all his opined limitations in the RFC assessment. Dkt. 13, at 3–5; Dkt. 15 at 4–5. Defendant contends the ALJ properly incorporated the opinion into the RFC assessment. Dkt. 14 at 2–4.

Dr. Rubio, a state agency consultative doctor, completed an RFC assessment as a portion of a Disability Determination Explanation. AR 107–09. He opined, in relevant part, Plaintiff can occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, and has "unlimited" handling (gross manipulation). AR 107–08. He also opined Plaintiff has manipulative limitations that include limited reaching left/right in front and/or laterally, reaching overhead, and "occasional overhead lifting/handling due to neck pain." AR 108–09. The ALJ gave significant weight to this opinion's finding that Plaintiff can perform light exertional work and can occasionally reach overhead. AR 22.

The ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). However, the ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570–71 (*quoting Vincent ex rel. Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Id.* at 571.

It is unclear if the ALJ adequately accounted for Dr. Rubio's opinion that Plaintiff is limited to occasional overhead lifting and handling. In the RFC determination, the ALJ found Plaintiff can perform light work, and can lift "within the light exertional limits," "occasionally

reach overhead," and "frequently finger with the non-dominant left hand." AR 17. However, the ALJ did not discuss Dr. Rubio's occasional overhead lifting and handling limitation in the RFC assessment when explaining the weight she gave to Dr. Rubio's opinion (*see* AR 17), or in any other portion of the decision. *See* AR 13–25.

Plaintiff's occasional overhead lifting and handling limitation is related to her ability to be employed and is therefore significant, probative evidence. *See* 20 C.F.R. § 404.1545(b) (the Commissioner must consider a claimant's RFC assessment "for work activity on a regular and continuing basis"). As the ALJ failed to provide any discussion regarding the overhead lifting and handling limitation, the Court cannot determine if the ALJ properly considered this limitation or simply ignored the evidence. Accordingly, the ALJ erred by failing to explain the weight given to Dr. Rubio's opinion regarding Plaintiff's limitation. *See Provencio v. Astrue*, 2012 WL 2344072, *9 (D. Ariz., June 20, 2012) (finding the ALJ erred by giving "great weight" to a consultative examiner's opinion, yet ignoring parts of the opinion).

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118–19 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111)). When the ALJ ignores significant and probative evidence in the record favorable to a claimant's position,

1  the ALJ "thereby provide[s] an incomplete [RFC] determination." *Hill v. Astrue*, 698 F.3d 1153,
2  1161 (9th Cir. 2012).
3        The ALJ's failure to discuss a portion of the opinion submitted by Dr. Rubio resulted in
4  an incomplete RFC assessment. Had the ALJ properly considered the occasional overhead lifting
5  and handling limitations opined by Dr. Rubio, she may have included additional limitations in
6  the RFC assessment and in the hypothetical questions posed to the vocational expert. As the
7  ultimate disability determination may change, the ALJ's failure to discuss all of Dr. Rubio's
8  opined limitations is not harmless and requires reversal.
9        B.      <u>Drs. Nelson and Peterson</u>
10        Plaintiff next asserts the ALJ erred by failing to properly consider the opinions of
11  examining psychologists Drs. Nelson and Peterson. Dkt. 13 at 5–14.
12        In January of 2014, Dr. Nelson completed a psychological diagnostic evaluation
13  regarding Plaintiff's functional abilities. *See* AR 555–61. Dr. Nelson reviewed portions of
14  Plaintiff's medical records, conducted a clinical interview, observed Plaintiff, and conducted a
15  mental status examination ("MSE"). AR 555–59. He opined Plaintiff will have marked difficulty
16  performing activities within a schedule, maintaining regular attendance, being punctual within
17  customary tolerances, and completing a normal workday or workweek due to focus on pain, low
18  energy, and insomnia. AR 559.
19        In October of 2012, Dr. Peterson completed a psychological evaluation regarding
20  Plaintiff's functional abilities. *See* AR 567–71. Dr. Peterson conducted a clinical interview,
21  observed Plaintiff, and conducted an MSE. AR 567–71. He opined Plaintiff will have marked
22  difficulty performing activities within a schedule, maintaining regular attendance, being punctual
23  within customary tolerances, adapting to changes in a work setting, communicating, and
24

maintaining appropriate behavior in a work setting. AR 569. He further opined Plaintiff would have severe difficulty in completing a normal workday or workweek without interruption from psychologically based symptoms. AR 569.

The ALJ discussed the findings of Drs. Nelson and Peterson and gave their opinions little weight, stating:

> Dr. Nelson opines that the claimant would have marked difficulty performing activities within a schedule, maintaining regular attendance, and being punctual with customary tolerances. He also opines that the claimant will have marked difficulty completing a normal workday and workweek due to focus on pain, low energy, and insomnia. (1) I note that Dr. Nelson reviewed minimal treatment records prior to rendering his opinion. (2) Despite her allegations of impairment, the claimant is consistently able to show up on-time to appointments by herself, can take care of her children, and can tend to her daily activities. Her ability to persist in these tasks indicates an ability to handle a routine and keep a schedule, and suggests a higher level of functioning than opined by Dr. Nelson. Furthermore, (3) the degree of impairment the claimant alleged to Dr. Nelson is not reflected in the treatment notes.
>
> . . . .
>
> [Dr. Peterson] opines that the claimant has marked impairment in her ability to perform activities within a schedule, maintain regular attendance, adapt to changes in a routine work setting, communicate and perform effectively in a work setting, and maintain appropriate behavior in a work setting. Dr. Peterson further opines that the claimant has severe limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. Notably, (1) Dr. Peterson did not review any medical records prior to rendering his opinion. Furthermore, (2) the limitations he opines are inconsistent with the claimant's ability to care for her two young children to include getting them to school regularly and preparing their meals.

AR 22–23 (internal citations omitted and numbering added).

When a treating or examining physician's opinion is contradicted, the ALJ can reject the opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (*citing Andrews*, 53 F.3d at 1043). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical

1 evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725

2 (*citing Magallanes*, 881 F.2d at 751).

3     Here, the ALJ rejected Drs. Nelson and Peterson's opinions for two reasons and named a

4 third reason to reject Dr. Nelson's—none of which is legally sufficient. The ALJ's first reason

5 for rejecting the doctors' opinions is Dr. Nelson reviewed minimal treatment records and Dr.

6 Peterson reviewed none prior to rendering their opinions. *See* AR 22–23. However, the ALJ

7 failed to explain why their failures to review records discredit their opinions. *See* AR 22–23.

8 Both doctors interviewed and observed Plaintiff and administered MSEs. *See* AR 555–61, 567–

9 71. Defendant does not cite, nor does the Court find, authority holding an examining physician's

10 failure to supplement his or her own examination and observations with additional records is a

11 specific and legitimate reason to give less weight to the opinions. *See* Dkt. 14. Therefore, this is

12 not a specific and legitimate reason for discounting Drs. Nelson and Peterson's opinions.

13     Second, the ALJ gave little weight to Drs. Nelson and Peterson's opinions because

14 Plaintiff is consistently able to show up on-time to appointments by herself, can care for her

15 children, and performs daily activities. AR 22–23. However, the ALJ failed to discuss specific

16 instances in the record where Plaintiff's attendance at appointments, childcare, and daily

17 activities support the ALJ's findings, or explain how such evidence contradicts Drs. Nelson and

18 Peterson's findings.

19     Further, the ALJ failed to discuss any clinical evidence regarding Plaintiff's childcare or

20 daily activities that conflicts with her findings. For example, in the clinical interview with Dr.

21 Nelson, Plaintiff stated that her typical day includes childcare and activities of daily living. AR

22 555–56. She reported similarly to Dr. Peterson, but stated that by the end of a day of childcare

23 and daily activities, "she can barely walk." AR 568. She also stated to Dr. Peterson that she must

24

make dinner before she sits because "she is not able to do much once the pain gets bad." *Id.* Additionally, she stated that her friend drives the children to and from school daily, and she relies on her mother for childcare assistance "when she is in a lot of pain." AR 556. At the hearing, Plaintiff testified that her mother lives with her and the children, assists her to get the children ready for school, and watches the children in the evening if Plaintiff needs to take a nap "due to pain." AR 39–40, 50. Plaintiff also testified that her mother washes the dishes, vacuums, sweeps, cleans the kitchen and the bathroom, and goes shopping for Plaintiff. AR 39, 42–43, 46. The ALJ failed to discuss any of these facts. Without more, the ALJ's second reason for giving little weight to Drs. Nelson and Peterson's opinions has failed to meet the level of specificity required to reject physicians' opinions. *See Embrey*, 849 F.2d at 421–22 ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings.").

Third, the ALJ rejected Dr. Nelson's opinion because she determined the degree of impairment alleged by Plaintiff to Dr. Nelson is not reflected in the treatment notes. AR 22. Defendant maintains, citing *Valentine v. Commissioner of Social Security Administration*, a conflict with treatment notes is a specific and legitimate reason to reject a treating physician's opinion. Dkt. 14 at 7; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009). However, this case is inapplicable. In *Valentine*, the Ninth Circuit affirmed the ALJ's decision to give less weight to a treating psychologist's opinion because the ALJ identified a contradiction within the opinion, and evidence in the record, including the physician's "own treatment progress reports" contradicted the physician's opinion that the plaintiff was disabled. *Id.* at 692–93.

Here, the ALJ gave Dr. Nelson's opinion less weight because it was inconsistent with *another physician's* opinions and treatment notes. AR 22. Further, the ALJ failed to identify which "treatment notes" in the record she was referring to, and any specific evidence in the treatment notes that is inconsistent with Dr. Nelson's opinion. AR 22. While an ALJ may reject an examining physician's opinion if it is contradicted by clinical evidence, *Bayliss*, 427 F.3d at 1216, "an ALJ errs when [she] rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for [her] conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (*citing Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). Accordingly, this is not a specific and legitimate reason for discounting Dr. Nelson's opinion.

Additionally, the ALJ failed to discuss significant, probative evidence within Dr. Nelson's opinion. As discussed above, the ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent*, 739 F.3d at 1394–95. However, the ALJ "may not reject 'significant probative evidence' without explanation." *Flores*, 49 F.3d at 570–71 (*quoting Vincent ex rel. Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571. Here, the ALJ broadly identified the "Medical Source Statement" portion of Dr. Nelson's opinion, including a discussion of marked difficulties, but failed to discuss any of Plaintiff's moderate difficulties or other relevant portions of the opinion. AR 22. Dr. Nelson opined Plaintiff had several moderate functional limitations that impacted her ability to perform full-time work, such as moderate difficulty asking simple questions or requesting assistance and communicating and performing effectively in a work setting due to anxiety. AR 559. Dr. Nelson also opined Plaintiff's memory, abstract thinking, sequential

thinking, focus on pain, low energy, insomnia, anxiety, and feelings of worthlessness are all likely to affect her ability to perform many work duties. AR 559–60. The ALJ failed to discuss this significant, probative evidence, which is error.

Without more, the ALJ's conclusory statements rejecting Drs. Nelson and Peterson's opinions failed to meet the level of specificity required to reject a physician's opinion and are insufficient for this Court to determine if the ALJ properly considered the evidence. Therefore, the ALJ erred. *See Embrey*, 849 F.2d at 421–22; *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

As discussed *supra*, "harmless error principles apply in the Social Security context." *Molina*, 674 F.3d at 1115. An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout*, 454 F.3d at 1055; *see Molina*, 674 F.3d at 1115.

Had the ALJ included all of Drs. Nelson and Peterson's limitations in the RFC assessment, Plaintiff would likely have been found disabled. For example, the ALJ found the Plaintiff's RFC assessment includes an ability to meet ordinary and reasonable employer expectations regarding attendance, production, and workplace behavior. *See* AR 17. However, Dr. Nelson opined Plaintiff will have marked difficulty in performing activities within a schedule and maintaining regular attendance due to pain, low energy, and insomnia. AR 559. Dr. Peterson opined Plaintiff will have marked difficulty in maintaining appropriate behavior in a workplace setting. AR 569. Moreover, according to the Vocational Expert ("VE"), Mark Harrington, employers will tolerate two absences per month. AR 71. If all the limitations opined by Drs.

Nelson and Peterson were included in the RFC and in the hypothetical questions posed to the VE, the ultimate disability determination may have changed. Accordingly, ALJ's error is not harmless and requires reversal. *See Molina*, 674 F.3d at 1115.

**II.     Whether the ALJ erred by failing to provide clear and convincing reasons supported by the record to discount Plaintiff's subjective testimony.**

Plaintiff contends the ALJ failed to give clear and convincing reasons for discounting her subjective symptom testimony. Dkt. 13 at 14–17. The Court concludes the ALJ committed harmful error in assessing the medical opinion evidence. *See* Section I, *supra*. Because the ALJ's reconsideration of the medical opinion evidence may impact her assessment of Plaintiff's subjective testimony, the ALJ must reconsider Plaintiff's subjective testimony on remand.

The Court also notes that on March 16, 2016, the Social Security Administration changed the way it analyzes a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). The term "credibility" will no longer be used. *Id*. Further, symptom evaluation is no longer an examination of a claimant's character; "adjudicators will not assess an individual's overall character or truthfulness." *Id*. at *10. The ALJ's decision, dated July 24, 2015, was issued approximately eight months before SSR 16-3p became effective. Therefore, the ALJ did not err by failing to apply SSR 16-3p. However, on remand, the ALJ is directed to apply SSR 16-3p when evaluating Plaintiff's subjective symptom testimony.

**III.     Whether the ALJ erred in finding Plaintiff not disabled at Step Five.**

Plaintiff contends the ALJ erred at Step Five of the sequential evaluation process because the ALJ failed to develop the record to clarify the nature of Dr. Rubio's opined limitations, and because the jobs identified by the VE did not contain all of Plaintiff's limitations and do not exist in sufficient numbers in the national economy. Dkt. 13 at 4–5; Dkt 15 at 4–7. As discussed above, the Court concludes the ALJ committed harmful error when she failed to properly

consider the opinions of Drs. Rubio, Nelson, and Peterson. *See* Section I, *supra*. The ALJ must therefore reassess the RFC on remand. *See* Social Security Ruling 96-8p ("The RFC assessment must always consider and address medical source opinions."); *Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, she must also re-evaluate the findings at Step Five to determine if there are jobs Plaintiff can perform in light of the RFC and existing in significant numbers in the national economy. *See Watson v. Astrue*, 2010 WL 4269545, *5 (C.D. Cal. Oct. 22, 2010) (finding the ALJ's RFC determination and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider a doctor's findings).

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds that the ALJ improperly concluded that Plaintiff was not disabled. Accordingly, the Court orders the Commissioner's final decision to deny benefits be vacated in its entirety and this matter remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a *de novo* hearing in accordance with the findings contained herein.

Dated this 26th day of July, 2017.

David W. Christel
United States Magistrate Judge

ORDER VACATING DEFENDANT'S DECISION
TO DENY BENEFITS - 13